STATE of Vermont v. Edward CARRASQUILLO

[795 A.2d 1141]

No. 00-438

January 22, 2002. This is an appeal by defendant Carrasquillo from the trial court's limitation of Carrasquillo's cross-examination of a State's witness who had allegedly assaulted Carrasquillo subsequent to the events underlying this appeal. Defendant also argues on appeal that the evidence presented at trial was quantitatively insufficient, as a matter of law, to satisfy the "substantial period" element of Vermont's kidnapping statute, 13 V.S.A. § 2404(3)(C). We affirm.

Defendant Carrasquillo was an inmate at the South Burlington Correctional Facility when he was charged, under a four-count information, with aggravated assault on Corrections Officer Charnley, aggravated assault with intent to prevent said law enforcement officer from performing a lawful duty, attempted escape, and kidnapping. The charges against Carrasquillo arose from an altercation involving himself, another inmate, Officer Charnley and a Nurse Brannagan who worked at the facility. The altercation began when Nurse Brannagan, accompanied by Officer Charnley, began dispensing medication to inmate Carrasquillo at his cell in the facility's "lockdown" unit. Carrasquillo was acting strangely: taking his medicine slowly, asking a lot of questions, stepping out of his cell, and insisting that he be allowed to go up the hall to look for a pair of sneakers he claimed was missing. He then stated he did not feel well and fell towards the hallway. As Officer Charnley attempted to close the cell door, Carrasquillo pulled a sharpened toothbrush, commonly referred to as a "shank," from his pocket and ordered the officer into the cell. A physical struggle between Officer Charnley and Carrasquillo ensued during which Carrasquillo's cellmate, on Carrasquillo's orders, grabbed Nurse Brannagan by the neck, restraining her. Other officers arrived at the scene as Officer Charnley and Carrasquillo continued to struggle and Nurse Brannagan was held "in a

hostage situation position." Carrasquillo then stabbed Officer Charnley in the head with the shank. Both Carrasquillo and the other inmate were ultimately returned to the cell. Soon thereafter, Carrasquillo was moved to a more secure facility. During the transfer, while Carrasquillo was in restraints, Officer Charnley approached Carrasquillo and struck him. Officer Charnley was subsequently discharged from employment by the facility, and criminal charges were filed against him based on this incident.

At trial on the four-count information against Carrasquillo, Officer Charnley served as a witness for the State. As a preliminary matter, the State brought a motion in limine to preclude Carrasquillo from introducing evidence that witness Officer Charnley: "(1) has a pending charge of simple assault in which defendant is the alleged victim, and (2) was recently terminated from the Department of Corrections following an internal investigation into that alleged simple assault, and (3) any reference to any civil suit that may or may not be pending regarding the alleged assault." Carrasquillo objected to the State's motion, arguing that the alleged assault demonstrates the witness' bias and motive for testifying. He noted, however, that he did not intend to "get into the facts" of the assault. The State conceded that Carrasquillo would be permitted to question Officer Charnley about "all the sources of bias and his anger towards Mr. Carrasquillo" for having stabbed him with the shank. The court granted the motion in part, and denied it in part, ruling that defense counsel could inquire on the issue of bias, "without getting into the facts of the subsequent incident," and that defense counsel could ask Officer Charnley "whether or not it's true that Mr. Carrasquillo has made allegations against him regarding a subsequent incident" which could subject him to civil and criminal liability.

During trial Carrasquillo was able to fully cross-examine Officer Charnley on issues of any bias or animosity he may have had towards him. Carrasquillo did question Officer Charnley as to whether he was exposed to any criminal and civil liability as a result of the allegations made by Carrasquillo. At the close of evidence, Carrasquillo moved for a judgment of acquittal on both the kidnapping and attempted escape charge, which was denied. The jury found Carrasquillo guilty of three out of four charges: aggravated assault, kidnapping, and attempted escape.

Carrasquillo argues on appeal that the trial court erred in granting the State's motion in limine and thereby refusing to allow defense counsel to cross-examine Officer Charnley about the circumstances surrounding Officer Charnley's purported assault on Carrasquillo. Carrasquillo cites V.R.E. 608(b), which allows the introduction, on cross-examination, of probative evidence of specific instances of the conduct of a witness to prove the witness' character for truthfulness or untruthfulness, for support of the proposition that evidence of Officer Charnley's assault on Carrasquillo would be probative of Officer Charnley's character for untruthfulness. Regardless of the validity of Carrasquillo's assertion that evidence of animosity is probative of one's character for truthfulness, we do not reach the merits of that claim as we hold that Carrasquillo failed to preserve for appellate review his claim that the trial court erred by limiting his cross-examination of Officer Charnley.

"To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). We have recently held that requests by counsel to the court, during a preliminary hearing, on the scope and extent of allowable cross-examination are

not "sufficiently concrete for appellate review." *State v. Koveos*, 169 Vt. 62, 71, 732 A.2d 722, 728 (1999). And that where defendant is "[e]ssentially . . . asking to be able to administer a test of hypothetical questions to the trial judge, with the consequence of any erroneous answer being that his conviction is reversed because defendant *might* have offered the evidence described in the hypothetical," defendant's hypothetical questions are neither an offer of proof nor a ruling on specific evidence for purposes of appellate review. *Id.* (emphasis in original). Failure to make an offer of proof to permit excluded evidence on this basis at trial precludes us from reaching this issue on appeal. See *id.*

At the hearing on the motion in limine defendant Carrasquillo engaged in a colloquy with the court on the scope of allowable cross-examination. Defense counsel argued that the subsequent assault on defendant by the witness was evidence of the degree of animosity and bias held by the witness against defendant and, for that reason, he should be allowed to develop this evidence during cross-examination of the witness. The court ruled that defendant would be allowed to inquire on the issue of bias, but without getting into the facts of the subsequent incident. Defense counsel then proceeded to inquire whether certain questions could be pursued, specifically, if he could ask the witness if he'd been charged with a crime as a result of the alleged assault or whether he'd been dismissed from employment. The court ruled he could not. Counsel made no objections to these limitations. Although counsel initially objected to the motion in limine, the court ruled that it would be granted only in part, and defendant failed to object to the limitations the court actually imposed. As we said in *Koveos*, questions to the court about the scope of its ruling are not objections. Because defendant never sought permission to develop the facts of

the alleged assault, and was granted permission to question the witness as to the existence and potential consequences of allegations made against him, and because defendant never objected to the court's ruling on the two hypothetical questions posed, he has not preserved these rulings for appellate purposes.

Under circumstances where defendant failed to preserve an issue for appeal, we can review the trial court's disputed evidentiary rulings only for plain error. See *id.* at 69, 732 A.2d at 727. Plain error exists only in exceptional circumstances where a failure to recognize it would strike at the heart of defendant's constitutional rights or result in a miscarriage of justice. *State v. Mears*, 170 Vt. 336, 341, 749 A.2d 600, 604 (2000). The error must not only affect substantial rights, but also have an unfair prejudicial impact on the jury's deliberations. *Id.* Here the fact that Carrasquillo stabbed Officer Charnley in the head was undisputed and clearly established a motive for Charnley to want Carrasquillo punished. We do not believe any additional motive supplied by Charnley's testimony on criminal proceedings is significant enough to show plain error.

Carrasquillo's second argument on appeal is that the evidence does not demonstrate that Nurse Brannagan was restrained for a "substantial period," as required under Vermont kidnapping statutes. The evidence, argues Carrasquillo, is therefore insufficient as a matter of law to sustain a conviction for kidnapping. On appeal, we review the denial of the motion for acquittal pursuant to V.R.Cr.P. 29 to determine "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has [produced] evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995) (quoting Reporter's Notes, V.R.Cr.P. 29).

Under Vermont law, a person commits the crime of kidnapping if the person:

(1) knowingly restrains another person with the intent to:

(A) hold the restrained person for ransom or reward; or

(B) use the restrained person as a shield or hostage; or

(C) inflict bodily injury upon the restrained person or place the restrained person or a third person in fear that any person will be subjected to bodily injury; or

(D) sexually assault the restrained person or place the restrained person or a third person in fear that any person will be sexually assaulted; or

(E) facilitate the commission of another crime or flight thereafter.

13 V.S.A. § 2405(a). Carrasquillo was charged and convicted under a theory of accomplice liability with intent to "inflict bodily injury upon the restrained person or place the restrained person or a third person in fear that any person will be subjected to bodily injury." *Id.* § 2405(a)(1)(C). "Restrain" is defined in the statutes as "restrict[ing] substantially the movement of another person without the person's consent or other lawful authority by . . . (C) confining the restrained person for a substantial period either in the place where the restriction commences or in a place. to which the person has been moved." *Id.* § 2404(3).

The kidnapping occurred when another inmate grabbed Nurse Brannagan, on Carrasquillo's order to "get her," and held her with a weapon to her throat during the escape attempt.* Nurse Brannagan testified she was held by the inmate for ten minutes during which she feared for her own physical safety. Another officer testified that the entire incident lasted two to three minutes. Carrasquillo maintains the amount of time Nurse Brannagan was restrained does not amount to a "substantial period" as required by the definition of "restrain" in 13 V.S.A. § 2404(3)(C). We have never ruled whether such a short period of confinement falls within the statutory definition of "restrain" under 13 V.S.A. § 2404(3)(C) such that it may support a kidnapping conviction. See *State v. Petruccelli*, 170 Vt. 51, 57, 743 A.2d 1062, 1067 (1999) (kidnapping conviction upheld; confinement lasted one and a half hours); *State v. Washington*, 166 Vt. 600, 601, 691 A.2d 583, 584 (1997) (mem.) (kidnapping conviction upheld; confinement lasted approximately 30 minutes); *State v. Lang*, 164 Vt. 598, 599, 664 A.2d 267, 268-69 (1995) (mem.) (kidnapping conviction upheld where actual confinement of victim lasted fifteen minutes). We find that when coupled with the circumstances present in the restraint of Nurse Brannagan, the time involved here is sufficient to support appellant's conviction for kidnapping under 13 V.S.A. § 2405(a)(1).

We have previously relied on *State v. La France*, 569 A.2d 1308 (N.J. 1990), for the proposition that one is confined for a substantial period if that "confinement is criminally significant in the sense of being more than merely incidental to the underlying crime." *Id.* at 1313 (internal citation omitted). Whether a confinement is sufficiently substantial to support a kidnapping conviction depends upon a "qualitative" analysis of the factors surrounding the confinement. Such factors relevant to this analysis include: (1)

---

* There was conflicting evidence whether Carrasquillo's accomplice used a razor blade or some other weapon while restraining Nurse Brannagan. No razor blade was ever found. The following day, however, a maintenance worker found shanks "jammed" into the vent of the inmates' cell.

whether the detention significantly increases the dangerousness or undesirability of the defendant's behavior, *id.*, (2) whether the detention occurred during the commission of a separate offense, and (3) whether the detention created a significant danger to the victim independent of that posed by the separate offense. *Id.* at 1310. For example, in *Lang*, we found that because certain factors existed which enabled the assailant to accomplish the confinement through threats and intimidation, those factors contributed to the finding that despite a brief period of confinement, there was sufficient evidence to support a kidnapping conviction. 164 Vt. at 598-99, 664 A.2d at 268 (evidence sufficient to support kidnapping conviction where defendant accosted frail, elderly victim at night, in her own home, wearing a ski mask, while demanding money of her, and refusing to let her leave her bedroom). The focus, therefore, is on the quality and nature of the restraint rather than just on duration. *Wofford v. State*, 867 S.W.2d 181, 183 (Ark. Ct. App. 1993). Here, Carrasquillo's accomplice restrained Nurse Brannagan with a weapon to her throat during a highly volatile and dangerous situation, thereby placing her in fear of bodily injury. Additionally, there was evidence presented that another officer 'delayed assisting Officer Charnley because of fear 'that Nurse Brannagan would be subjected to bodily injury. Restraining or confining someone is not an essential or inherent component of an escape attempt and doing so only increased the level of risk and "dangerousness" of Carrasquillo's action. Confinement of Nurse Brannagan was, therefore, not incidental to the attempted escape once she was put in a hostage situation and threatened with physical harm. We thus find, that upon examination of qualitative factors surrounding the restraint, the period of confinement was "substantial" enough to support a kidnapping conviction under 13 V.S.A. § 2405(a)(1)(C).

*Affirmed.*