2003 VT 85

## State of Vermont v. Greg L. Goodhue

[833 A.2d 861]

No. 02-046

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed September 5, 2003

*Jane Woodruff,* Executive Director, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals from the district court's judgment of conviction following a jury trial on charges of burglary, attempted sexual assault and kidnapping. Defendant challenges the court's denial of his motion for judgment of acquittal on the sexual

assault and kidnapping charges. We affirm the conviction for attempted sexual assault and reverse the conviction for kidnapping.

¶ 2. Twelve-year-old Amanda and her friend, thirteen-year-old Carolyn, were in the kitchen at Amanda's family home when a strange man entered the kitchen through the back door and ordered Carolyn into the adjoining bathroom. Amanda followed them in. The man threw Carolyn to the bathroom floor and got on top of her. He tried to get his hand down Carolyn's pants. Amanda began throwing objects at him. The man got off of Carolyn and pushed Amanda into a counter. He then returned to Carolyn, again pushed her to the floor and ripped her shirt in the process. He unbuttoned and unzipped Carolyn's pants and tried to take them off. At this point, a door slammed and the man quickly got off Carolyn and fled the scene. Amanda testified that the event lasted from three to five minutes. The girls went to a neighbor's house and reported what had happened. The girls ultimately identified the man as defendant. He was charged with kidnapping, attempted sexual assault, and burglary.

¶ 3. At the close of the State's case, defendant moved for judgment of acquittal pursuant to V.R.Cr.P. 29 on the kidnapping and sexual assault charges, arguing respectively that the evidence failed to prove that Carolyn was restrained for a substantial period of time and that the evidence failed to establish the attempted sexual assault as there was "no commencement of the consummation." The court denied these motions. Defendant was convicted on all three counts, and was sentenced to five to ten years for attempted sexual assault, to be served concurrent with a sentence of ten to fifteen years for kidnapping. He was sentenced to five to ten years for burglary, to be served consecutive to his other sentences. Defendant again raised motions for judgment of acquittal on the above grounds in a post-verdict filing, which the court denied. This appeal followed.

¶ 4. On appeal, the standard of review for the denial of a motion for judgment of acquittal is "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Carrasquillo*, 173 Vt. 557, 559, 795 A.2d 1141, 1145 (2002) (mem.) (internal quotations omitted).

¶ 5. The State adduced sufficient evidence of an attempted sexual assault to sustain the jury's verdict of guilty. Defendant was charged with attempted sexual assault under 13 V.S.A. § 3252(a)(3) (defendant engaged in a sexual act with another person who was under the age of

16 and was not his spouse). Vermont's attempt statute, 13 V.S.A. § 9(a), reads: "[a] person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of the same, shall be punished as herein provided . . . ." In *State v. Hurley*, 79 Vt. 28, 64 A. 78 (1906), we described what was necessary to constitute an attempt. "The act must be of such a character as to advance the conduct of the actor beyond the sphere of mere intent. It must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *Id.* at 31, 64 A. at 78.

¶ 6. The evidence of the attack on Carolyn showed that defendant's actions had advanced from "mere intent" to the "commencement of the consummation" of a sexual assault. As the trial court wrote:

> the acts already committed by Defendant were so far along the continuum of translating intent into action that the contemplated crime had taken on an air of inevitability, but for the sudden slamming of the back door which startled Defendant and caused him to cease and flee.

There was sufficient evidence presented to show, beyond a reasonable doubt, that defendant was guilty of attempted sexual assault. Therefore, the court correctly denied his motion for judgment of acquittal on that charge.

¶ 7. Defendant next argues that the trial court improperly refused to grant a motion for acquittal on the kidnapping count. Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that the victim was restrained for a substantial period of time because the time period was brief and because any confinement was related to the underlying offense of attempted sexual assault. Resolution of this claim requires an examination of the development of the law relating to kidnapping.

¶ 8. Kidnapping was traditionally defined as "'the forcible abduction or stealing away of a man, woman, or child, from their own country and sending them into another.'" *State v. Innis*, 433 A.2d 646, 652 (R.I. 1981) (quoting 4 Blackstone, Commentaries on the Laws of England *219 (2 Sharswood ed. 1860)). The idea that the victim must be carried beyond certain established boundaries appeared in early statutory development of the offense in this country. For example, prior to 1904, the crime of kidnapping was defined in Vermont statutes as the carrying off or removal of a person *from* this state. See 1894 V.S.

§ 4912; 1880 R.L. § 3865; 1862 G.S. 112, § 31; 1839 R.S. 94, § 24. In 1904, the crime of kidnapping was broadened to include asportation into the state and detention or confinement:

> Whoever, without legal authority, forcibly or secretly confines or imprisons another person within this state against his will, or forcibly carries or send such person out of this state, or forcibly seizes and confines or inveigles or kidnaps another person with intent either to cause him to be secretly confined or imprisoned in this state against his will, or to cause him to be sent out of this state against his will, or in any way held to service against his will, shall be punished by imprisonment in the state prison for a term not exceeding ten years, or by a fine of not more than ten thousand dollars, or both.

1904, No. 149, § 1. Although the statute has been replaced, during the eighty-six years that this statute was in place, only the penalties changed.

¶ 9. Under early kidnapping statutes, many state and federal courts followed what has been described as the traditional rule in American jurisprudence, holding that any asportation, that is, carrying away of the victim, no matter how short in distance or duration, was sufficient to establish the crime of kidnapping. A leading case espousing this point of view is *People v. Chessman*, 238 P.2d 1001 (Cal. 1951). In *Chessman*, the victim was moved only twenty-two feet before undergoing a sexual assault by the defendant. The California Supreme Court upheld the defendant's kidnapping conviction and stated, "[i]t is the fact, not the distance, of forcible removal which constitutes kidnapping in this state." *Id.* at 1017. Likewise in *People v. Florio*, 92 N.E.2d 881, 882-83 (N.Y. 1950), the New York Court of Appeals expressed its view that under the applicable statute, any confinement or movement constituted a kidnapping even if such movement was undertaken only to facilitate another crime. See also *Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979) (acknowledging, but ultimately rejecting this view); *State v. Jacobs*, 380 P.2d 998, 1002 (Ariz. 1963); *Bailey v. State*, 247 S.E.2d 588, 590-91 (Ga. Ct. App. 1978); *Wilson v. State*, 255 N.E.2d 817, 818-19 (Ind. 1970); *Harris v. State*, 254 N.W.2d 291, 296-97 (Wis. 1977).

¶ 10. Today however, a majority of courts have moved away from the traditional approach and now hold that kidnapping statutes do not apply to unlawful confinements or movements incidental to the

commission of other felonies. *State v. La France*, 569 A.2d 1308, 1309-12 (N.J. 1990); *State v. Innis*, 433 A.2d at 654; see also F. Wozniak, *Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping*, 39 A.L.R.5th 283, § 3 (1996) (collecting cases). This departure was prompted by a recognition that a literal reading of the kidnapping statutes can lead to overzealous enforcement, with the result that "persons who have committed such substantive crimes as robbery or assault — which inherently involve the temporary detention or seizure of the victim — will suffer the far greater penalties prescribed by the kidnapping statutes." *Berry*, 604 F.2d at 226.

¶ 11. This narrowing of the applicability of kidnapping laws is illustrated by two leading cases, *People v. Levy*, 204 N.E.2d 842, 844 (N.Y. 1965), and *People v. Daniels*, 459 P.2d 225, 231-32 (Cal. 1969). In *Levy*, the New York Court of Appeals reexamined the *Florio* definition, found it overbroad, and rejected its earlier construction of the kidnapping law. The court observed that, if read literally, the kidnapping statute would "overrun" other crimes, notably robbery and rape. *Levy*, 204 N.E.2d at 844. It expressly limited application of the kidnapping statute to kidnapping in the conventional sense, which envisages the asportation of a person under restraint and compulsion, and not merely restraint alone. *Id.* at 843-44. In *Daniels*, the California Supreme Court reconsidered its position in *Chessman* regarding the degree of asportation needed to sustain a kidnapping conviction. In reversing a kidnapping conviction where the three victims were forced to move about in their own homes a matter of eighteen, five, and thirty feet respectively, the Supreme Court expressed concern that "every assault could also be prosecuted for kidnapping . . . as long as the slightest movement was involved." 459 P.2d at 231; see also *Harkins v. State*, 380 So. 2d 524, 528 (Fla. Dist. Ct. App. 1980) (if statute applied literally, it would convert every first-degree robbery and every forcible rape into two life felonies); *Alam v. State*, 776 P.2d 345, 349 (Alaska Ct. App. 1989) ("restrain," if too broadly defined, could turn every robbery, rape, or simple assault into a kidnapping).

¶ 12. There are literally hundreds of reported decisions from around the country dealing with whether, and under what circumstances, the detention, confinement, or asportation of a victim initially accosted for the purpose of robbery, sexual assault or some other crime will suffice to sustain a separate conviction for kidnapping. F. Wozniak, *supra*, 39 A.L.R.5th 283. The modern approach is to construe the kidnapping statutes so as "to prevent gross distortion of lesser crimes

into a much more serious crime by excess of prosecutorial zeal." *People v. Miles*, 245 N.E.2d 688, 695 (N.Y. 1969). As the Court of Appeals noted in *People v. Lombardi*, 229 N.E.2d 206, 208 (N.Y. 1967), "the direction of the criminal law has been to limit the scope of the kidnapping statute . . . to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident."

¶ 13. In determining whether a separate kidnapping conviction was supportable, courts have considered various factors, including whether evidence of the seizure, detention, or movement was or was not inherent in the nature of the underlying crimes; whether the crime was facilitated by the confinement; whether the movement or confinement prevented the victim from summoning assistance; whether the movement or detention lessened the defendant's risk of detection; and whether the movement or detention created a significant danger or increased the victim's risk of harm. *La France*, 569 A.2d at 1309-12; *Burton v. State*, 426 A.2d 829, 832-35 (Del. 1981); *Faison v. State*, 426 So. 2d 963, 966 (Fla. 1983); *State v. Raynor*, 495 S.E.2d 176, 180 (N.C. Ct. App. 1998).

¶ 14. From the multiplicity of decisions following the majority view, some commonality can be found. Whether the confinement or movement of the victim is merely incidental to another crime depends on the circumstances. *La France*, 569 A.2d at 1312 ("[T]here is no mathematical certainty to the definitions of movement, nor to the distance and duration requirements . . . ."). In *State v. French*, 139 Vt. 320, 321, 428 A.2d 1087, 1088 (1981), this Court recognized the general proposition that convictions for both kidnapping and a primary charge of rape or robbery, to which the kidnapping is alleged to have been incidental, will not stand where the detention necessary to support the kidnapping conviction was quantitatively no greater than the detention which is, by virtue of the nature of the crime, incidental to the underlying rape or robbery.

¶ 15. We again visited the issue in *State v. Carrasquillo*, 173 Vt. at 557-58, 795 A.2d at 1143, a case involving a charge of kidnapping brought against a prison inmate who ordered another inmate to restrain a nurse during an attempt to escape. In *Carrasquillo*, defendant argued that the restraint of the nurse was not for a substantial period and could not support the kidnapping conviction. We held that the two to three minutes involved in these circumstances was sufficient to support the kidnapping conviction. In coming to this

conclusion we made clear that the issue must be decided by a qualitative analysis of the factors surrounding the confinement.

> [O]ne is confined for a substantial period if that "confinement is criminally significant in the sense of being more than merely incidental to the underlying crime." Whether a confinement is sufficiently substantial to support a kidnapping conviction depends upon a "qualitative" analysis of the factors surrounding the confinement. Such factors relevant to this analysis include: (1) whether the detention significantly increases the dangerousness or undesirability of the defendant's behavior, (2) whether the detention occurred during the commission of a separate offense, and (3) whether the detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 560-61, 795 A.2d at 1146 (relying on *La France*, 569 A.2d 1308 (internal citations omitted)); see also *State v. Alexander*, 173 Vt. 376, 387, 795 A.2d 1248, 1257 (2002) (kidnapping conviction upheld where victim was moved approximately 100 feet to increasingly isolated parts of the building over a period of ten to fifteen minutes with intent to perpetrate further violence). We concluded that "[r]estraining or confining someone is not an essential or inherent component of an escape attempt and doing so only increased the level of risk and 'dangerousness' of [defendant's] action." *Carrasquillo*, 173 Vt. at 561, 795 A.2d at 1146. In affirming the kidnapping conviction, we held that the confinement of the nurse was not incidental to the attempted escape. *Id.*

¶ 16. Thus, the test we have adopted to determine whether confinements or movements involved are such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution.

¶ 17. Between the time we recognized the narrowing of the applicability of kidnapping laws in *French* and our decision in *Carrasquillo*, the Legislature promulgated a major revision of the Vermont Criminal Code and, as part of that effort, rewrote the statutory definition of kidnapping. 1989, No. 293 (Adj. Sess.), § 3 (codified as amended at 13 V.S.A. § 2405). The current law defining kidnapping generally parallels the Model Penal Code definition of

kidnapping and requires that the restraint must be accomplished for one of four specified purposes. See Model Penal Code § 212.1 (1980).[1] Our Legislature deviated from the Code and added an additional purpose: that the person knowingly restrain another person with the intent to sexually assault the restrained person. 13 V.S.A. § 2405(a)(1)(D). Moreover, as part of the criminal code revision, the penalty for kidnapping was increased to a maximum of life imprisonment for all kidnappings. 13 V.S.A. § 2405(b).[2]

¶ 18. In this case, defendant was charged pursuant to 13 V.S.A. § 2405(a)(1)(D): "knowingly restrain[ing] another person with the intent to sexually assault the restrained person or place the restrained person or a third person in fear that any person will be sexually assaulted." The State relied on the definition of "restrain" found in 13 V.S.A. § 2404(3)(C): " 'Restrain' means to restrict substantially the movement of another person without the person's consent or other lawful authority by confining the restrained person for a substantial period either in the place where the restriction commences or in a place to which the person has been moved."

¶ 19. A review of the legislative history pertaining to this portion of the criminal code revision reveals legislative intent to narrow the scope of the definition of kidnapping and to increase the severity of the punishment for defendants who kidnap their victims with the intent to sexually assault them. Testimony before the House Judiciary Committee also indicates that the change in the law was intended to ensure that a substantial restraint involved in a sexual assault could be prosecuted as a separate crime of kidnapping.

¶ 20. Thus, the Legislature provided greater specificity to the statutory definition of kidnapping, and emphasized the availability of the charge of kidnapping when it is used to perpetrate a sexual assault. The confinement, movement, or detention used to facilitate a sexual assault, however, must be criminally significant in and of itself and not merely incidental to the sexual assault. That is, there must be a

---

[1] In the Model Penal Code, kidnapping is defined by the requirement that the restraint must be accomplished for one of four purposes: to hold the victim for ransom or reward, or as a shield or hostage; to facilitate the commission of a felony or flight thereafter; to inflict bodily injury on or terrorize the victim; or to interfere with the performance of any governmental or political function.

[2] Under the prior law, kidnapping anyone over sixteen years of age carried a maximum term of twenty-five years, kidnapping anyone under the age of sixteen years carried a maximum term of thirty years, and, if the intent of the kidnapping was to extort money or other valuable thing, the maximum penalty was life imprisonment.

separate kidnapping. The restraint must have increased the dangerousness of the defendant's actions, further isolated the victim, and increased her vulnerability.

¶ 21. It is appropriate to narrowly construe a statute that carries a potential sentence of life imprisonment, especially when that potential sentence is compared with the maximum sentence available for the underlying crime. See *Berry*, 604 F.2d at 225-26 (denouncing the inequity inherent in permitting kidnapping prosecutions of those who in reality committed lesser or different offenses); *Daniels*, 459 P.2d at 237 (citing to the annotations of the Model Code wherein the potential for abusive prosecution is criticized). As noted, § 2405(a)(1)(D) — kidnapping with the intent to commit a sexual assault — carries a potential life sentence. Sexual assault, as charged in this case, is punishable by imprisonment for not more than twenty years. 13 V.S.A. § 3252(a)(4). This is a significant difference. Although the plain language of § 2405(a)(1)(D) appears to encompass the usual case of sexual assault, in which some movement or confinement occurs, a literal interpretation of the statutory language would not be sensible or just. We do not believe the Legislature intended to afford the prosecution a choice of two penalties of such disparate nature for the crime of sexual assault. And, the rule of lenity requires that any doubts created by ambiguous legislation be resolved in favor of the defendant. *State v. Fuller*, 168 Vt. 396, 402, 721 A.2d 475, 480 (1998); see also *State v. Gundlah*, 166 Vt. 518, 527-28, 702 A.2d 52, 57-58 (1997) (Court will always avoid statutory construction leading to absurd or irrational results). We cannot assume that any restraint incident to a sexual assault, however slight, constitutes kidnapping. We reiterate our policy set forth in *Carrasquillo* and hold that the focus must be on the quality and nature of the restraint. 173 Vt. at 560-61, 795 A.2d at 1146. In that regard, we note that an offense such as rape necessarily contemplates restrictions on the victim's liberty while the crime is being committed.

¶ 22. States with similar statutory provisions have reached the same result. In *State v. Rich*, 305 N.W.2d 739, 742 (Iowa 1981), the court interpreted a kidnapping statute that provides in pertinent part:

> A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . .

(3) The intent to . . . subject the person to a sexual abuse.

After a review of the development of kidnapping jurisprudence, the court in *Rich* held that the legislature intended the terms "confines" and "removes" to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. It wrote:

> Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

*Id.* at 745.

■ ¶ 23. Evaluating defendant's actions in this light, we conclude that the movement of Carolyn from the kitchen to the bathroom floor did not exceed the confinement or removal inherent in the commission of the crime of sexual assault nor did it increase the danger to the victim over and above the danger presented by the attempted sexual assault. Defendant's actions cannot, therefore, provide the basis for a kidnapping conviction. See *Wilson v. State*, 500 A.2d 605, 610 (Del. Super. Ct. 1985) (restraint was not more than is ordinarily incident to the offense of rape).

*Defendant's conviction and sentence for attempted sexual assault are affirmed. Defendant's conviction and sentence for kidnapping are vacated.*