2011 VT 90

**STATE of Vermont v. Stewart W. JONES, Jr.**

[44 A.3d 148]·

No. 10-024

¶ 1. August 10, 2011. Defendant appeals from his conditional guilty plea to kidnapping in violation of 13 V.S.A. § 2405 (a)(1)(E). He argues that the court erred in denying his motion to dismiss for lack of a prima facie case. According to defendant, his conduct did not constitute kidnapping because the restraints imposed on the victims were incidental to the burglary of an occupied dwelling. We affirm.

¶ 2. Defendant was charged with kidnapping in May 2006 for conduct that occurred in February 1997. As noted above, he moved to dismiss for lack of a prima facie case. At a hearing on the motion, the State produced sworn oral testimony from one of the victims and affidavits of numerous other witnesses. The court issued a written order denying the motion and finding as follows. The victims Warren Williams and his wife Catherine were in their seventies at the time of the incident. They lived in South Royalton where Warren, who was retired, raised beef cattle as a hobby. Warren purchased farm equipment and other items with cash; he did not believe in purchasing anything on credit. Consequently, he had a good amount of cash on hand. Family members were aware of this fact, but the subject was not discussed with others.

¶ 3. On February 11, 1997, Warren was working outside of the couple's home when he noticed a car abruptly pull up at

for loss of lateral support such that summary judgment was improper.

the side of the house. Two men wearing camouflage rapidly exited the car in a stooped position and entered the back of the house. Warren feared for his wife's safety so he grabbed a large pair of pliers and entered the residence. Warren testified that the men in the house were wearing ski masks. One of the men approached Warren. Warren tried to hit him with the pliers, but the man blocked the blow and grabbed Warren. The man demanded to know the location of the parties' money. He slammed Warren into the wall, breaking the paneling and cracking the sheetrock underneath. The man continued to demand money. When Warren refused to disclose where the money was, the man discharged a gun by Warren's ear. Warren's hands were then duct-taped behind his back. Warren saw his wife on the bedroom floor with her hands duct-taped and a vacuum cleaner cord wrapped around her hands and body.

¶ 4. The men took approximately $25,000 from a bureau drawer, as well as Catherine's pocketbook and Warren's wallet. The men stayed at the home for fifteen to twenty minutes. After they left, Warren was eventually able to stand up, and after checking on his wife, he went outside to summon help. Warren stood in the middle of Route 14 with his hands still taped behind his back, yelling for help. Several cars swerved around him but did not stop. After approximately twenty minutes, Warren's grandson approached, and he freed Warren and Catherine.

¶ 5. Police suspected that a family member was involved in the burglary. Defendant is a cousin of Warren and Catherine's son-in-law, and Warren remembered meeting defendant prior to the burglary. Defendant schemed with several other individuals to commit the burglary. According to testimony from one of these individuals, it was defendant who tied up Catherine and Warren. Defendant was not arrested until many years later when a tipster contacted the

police. In March 2007, defendant made admissions to police while he was being transported to a corrections facility, including an expression of confusion over why he was being charged with kidnapping when he had not taken anyone out of the house.

¶ 6. Based on these and other findings, the court concluded that the State's evidence fairly and reasonably tended to show that defendant committed the offense of kidnapping beyond a reasonable doubt. In reaching its conclusion, the court rejected defendant's argument that the restraints imposed were merely incidental to the burglary of the victims' home. Unlike a sexual assault or robbery from a person, the court explained, restraining someone was not an essential or inherent component of a burglary. In this case, the victims were restrained so that the intruders could go through their home, look for money, steal the money, and then flee, leaving the victims still restrained as they did so. The court found that the detention of the victims significantly increased the undesirability of defendant's actions and created a significant danger to the victims, independent of that posed by the separate offense of burglary. It thus denied defendant's motion. Defendant entered a conditional guilty plea to kidnapping, reserving his right to challenge the ruling on the motion to dismiss. This appeal followed.

¶ 7. On appeal, defendant reiterates his argument below. Defendant contends that the evidence was insufficient to support a prima facie case of kidnapping because the restraint of the victims was necessarily incidental to the burglary of an occupied dwelling. Defendant maintains that the burglary of an occupied dwelling is inherently dangerous, and that burglary contemplates that the occupants of the home will be restrained.

¶ 8. On review of the trial court's ruling, "we consider whether the evidence, taken in the light most favorable to the State, excluding modifying evidence, would fairly and reasonably tend to show that the defendant committed the offense beyond a reasonable doubt." *State v Stamper*, 2011 VT 18, ¶ 3, 189 Vt. 583, 15 A.3d 142 (mem.); see V.R.Cr.P. 12(d)(2). We find the evidence sufficient here.

¶ 9. A person commits the crime of kidnapping if he "knowingly restrains another person with the intent to . . . facilitate the commission of another crime or flight thereafter." 13 V.S.A. § 2405 (a)(1)(E). The word "restrain" means "to restrict substantially the movement of another person without the person's consent or other lawful authority by . . . confining the restrained person for a substantial period either in the place where the restriction commences or in a place to which the person has been moved." *Id.* § 2404(3)(C). "A restraint is 'without consent' if it is accomplished . . . by force, threat or deception." *Id.* § 2404(4)(B).

¶ 10. We have recognized that a person "is confined for a substantial period if that 'confinement is criminally significant in the sense of being more than merely incidental to the underlying crime.'" *State v. Carrasquillo*, 173 Vt. 557, 560, 795 A.2d 1141, 1146 (2002) (mem.) (quoting *State v. LaFrance*, 569 A.2d 1308, 1313 (N.J. 1990)). The question of "[w]hether a confinement is sufficiently substantial to support a kidnapping conviction depends upon a 'qualitative' analysis of the factors surrounding the confinement," including:

> (1) whether the detention significantly increases the dangerousness or undesirability of the defendant's behavior, (2) whether the detention occurred during the commission of a separate offense, and (3) whether the detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 560-61, 795 A.2d at 1146 (citation omitted). In other words, "[t]he focus . . .

is on the quality and nature of the restraint rather than just on duration." *Id.* at 561, 795 A.2d at 1146.

¶ 11. In *Carrasquillo*, we sustained a kidnapping conviction where the defendant, a prison inmate, directed his cellmate to hold a nurse at knifepoint to facilitate the defendant's escape from his cell. The incident lasted between two and ten minutes. The defendant argued on appeal that the nurse had not been restrained for a "substantial period." We rejected this argument, finding that the nurse had been restrained with a weapon to her throat during a highly volatile and dangerous situation, placing her in fear of bodily injury. There was also evidence that a correctional officer had delayed assisting another officer, who was in the defendant's cell and had been stabbed by the defendant, because of fear that the nurse would be injured. We reasoned that "[r]estraining or confining someone is not an essential or inherent component of an escape attempt and doing so only increased the level of risk and 'dangerousness' of [the defendant's] action." 173 Vt. at 561, 795 A.2d at 1146. We thus concluded that the nurse's confinement was not incidental to the attempted escape. *Id.*

¶ 12. We held otherwise in *State v. Goodhue*, which involved an attempted sexual assault. 2003 VT 85, 175 Vt. 457, 833 A.2d 861. In that case, the defendant entered a home where two young girls were present. He ordered one of the girls into an adjoining bathroom, threw her to the floor, and got on top of her. He tried to take off her clothes while the girl's friend attempted to stop him. When a door slammed elsewhere in the home, the defendant fled the scene. On appeal, the defendant argued that there was insufficient evidence to establish that the victim was restrained for a "substantial period" because any confinement was brief and related to the underlying offense of attempted sexual assault. Focusing on the quality and nature of the restraint, we agreed. *Id.* ¶ 21. We found that the defendant's movement of the victim from the kitchen into the bathroom did not exceed the confinement or removal inherent in the commission of the crime of sexual assault nor did it increase the danger to the victim over and above the danger presented by the attempted sexual assault. *Id.* ¶ 23. We noted, moreover, that offenses such as rape necessarily contemplate restrictions on the victim's liberty while the crime is being committed. *Id.* ¶ 21. Thus, we concluded that the confinement at issue was "merely incidental" to the defendant's underlying offense of attempted sexual assault. *Id.* ¶ 20.

¶ 13. Contrary to defendant's suggestion, restraining another person is neither an element nor a necessary component of burglary, see 13 V.S.A. § 1201 (defining burglary, in relevant part, as an unauthorized entry into an occupied dwelling with intent to commit a larceny therein), and it is reasonable to construe the kidnapping statute to cover the behavior at issue here. As the State points out, the elements of burglary of an occupied dwelling are satisfied regardless of whether the occupants are awake or asleep, and regardless or whether there is any direct interaction between the burglar and the victims. Indeed, we implicitly rejected defendant's argument on this point in *State v. Lang*, a case with very similar facts to those presented here. 164 Vt. 598, 664 A.2d 267 (1995) (mem.). In *Lang*, the defendant and an accomplice burglarized the home of an elderly couple. They bound the husband's hands and feet to his poster bed with duct tape and verbally coerced the wife, who was eighty-seven years old, to remain in her bedroom. The men sabotaged the couple's telephone and ransacked the house for fifteen minutes before departing. The wife freed her husband, but she was not able to solicit help until the following morning when the

paper carrier arrived. As in the cases above, the defendant argued on appeal that his kidnapping conviction should be overturned because the wife was not restrained for a "substantial period." We concluded otherwise, finding that the wife had been confined to her bedroom through threats and intimidation for at least fifteen minutes, and she was effectively confined to her home for several hours until she was able to seek outside assistance. *Id.* at 599, 664 A.2d at 268; see also *Wofford v. State*, 867 S.W.2d 181, 183 (Ark. Ct. App. 1993) (holding that when victim is confined such that escape is made difficult or impossible, fact that restraint is of brief duration does not negate kidnapping conviction).

¶ 14. Defendant acknowledges the factual similarity between this case and *Lang*, but he maintains that the cases are legally distinct. According to defendant, *Lang* focused on the brief duration of the confinement rather than whether it was incidental to the crime of burglary. We disagree. In *Lang*, as in this case, the defendant argued that the victims were not confined for a "substantial period" as required by 13 V.S.A. § 2404(3)(C). The temporal duration of the restraint was relevant but not to the exclusion of other qualitative factors. *Lang*, 164 Vt. at 599, 664 A.2d at 268-69. In support of our conclusion in *Lang*, we cited *State v. LaFrance*, the same case on which we later relied in *Carrasquillo* for the proposition that one is confined for a substantial period if that " 'confinement is criminally significant in the sense of being more than merely incidental to the underlying crime.' " 173 Vt. at 560, 795 A.2d at 1146 (quoting *LaFrance*, 569 A.2d at 1313). Indeed, in *Carrasquillo*, we construed *Lang* as having applied this test, and having turned on evidence that the defendant had accosted a frail, elderly victim at night, in her own home, wearing a ski mask, while demanding money of her, and refusing to let her leave her

bedroom. 173 Vt. at 561, 795 A.2d at 1146. We recognized that *Lang* focused "on the quality and nature of the restraint rather than just on duration," explaining that in *Lang* we held that "because certain factors existed which enabled the assailant to accomplish the confinement through threats and intimidation, those factors contributed to the finding that despite a brief period of confinement, there was sufficient evidence to support a kidnapping conviction." *Id.*

¶ 15. In the instant case, as in *Lang*, defendant and his accomplice entered the residence of two individuals and accosted them. Defendant was wearing a ski mask and carrying a gun. He repeatedly demanded to know where the victims kept their money. His burglary was evidently accomplished upon entry. Nevertheless, defendant bound Catherine's hands and feet immediately upon entering the residence, and Catherine remained restrained for approximately forty minutes until she was freed by her grandson. Defendant also overpowered Warren, battered him, threatened him with a gun and taped his hands. Warren was restrained for over twenty minutes and, like Catherine, required outside assistance to be freed.

¶ 16. Binding the limbs of the victims and firing a gun near one of them significantly increased the dangerousness and undesirability of defendant's burglary. This is well illustrated by the tableau of Warren standing in the middle of a state highway with his hands bound seeking help for himself and his wife. Neither the restraint, nor defendant's gunplay, was necessary to carry out the burglary, and we reject defendant's assertion to the contrary. Indeed, the restraint of this couple commenced upon completion of the burglary, and continued after defendant left the scene. The restraint created a danger independent of the risk posed by burglars entering an occupied home intent on theft. The burglary was an offense

separate from the kidnapping. Reciprocally, and considering the qualitative factors surrounding the restraint, we agree with the trial court that the period of the victims' confinement was sufficiently "substantial" to support an independent kidnapping conviction under 13 V.S.A. § 2405(a)(1)(E). Defendant's motion to dismiss was therefore properly denied.[*]

*Affirmed.*

---

[*] Defendant raises an argument concerning the statute of limitations in a pro se brief filed with the Court. There is no statute-of-limitations issue here. See 13 V.S.A. § 4501(a) ("Prosecutions for . . . kidnapping may be commenced at any time after the commission of the offense.").