*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-447

DECEMBER TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Rutland Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Matthew Nunn | } | DOCKET NO. 1482-9-13 Rdcr |

Trial Judge: Thomas A. Zonay

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a conviction, based on a jury verdict, of possession of "200 milligrams or more of one or more . . . substances containing heroin," in violation of 18 V.S.A. § 4233(a)(2). He contends the evidence was insufficient to prove that the substance in question contained heroin. We affirm.

The record evidence may be summarized as follows. A Rutland City Police Officer testified that, on the afternoon of September 5, 2013, he was driving a marked police cruiser when he observed defendant riding a bicycle in the parking lot of a convenience store. The officer drove into the lot, exited the cruiser, and told defendant that he wanted to speak to him. The officer then observed defendant walk in front of the cruiser toward a trash can near the store, drop a small plastic bag on the ground, and discard something else into the trash can. The officer looked into the trash can, observed several small plastic bags containing a powdery substance sitting at the top, and took possession of them. He retrieved eight plastic bags from the trash can. Based on his training in identifying drugs and their packaging, and eighteen years of experience in handling what he estimated to be hundreds of drug investigations, the officer suspected that the bags contained heroin.

Defendant waived his Miranda rights, and in response to questioning by the officer indicated that the bags contained heroin, that he had purchased a total of ten bags, and that he had used two of them before the encounter. The officer transported defendant and the plastic bags to the police station, where he performed a field test using a testing kit on contents from one of the eight bags recovered from the trash can as well as well as contents from the bag that defendant had dropped on the ground. The powder in the bag recovered from the trash can tested positive for heroin; the powder in the bag recovered from the ground tested negative.

At trial, a chemist from the Vermont Forensic Lab (VFL) with over fourteen years of drug testing experience, ten with the VLF, testified for the State. After describing her education and training, including successful completion of annual competency examinations, her experience in conducting thousands of drug analyses, and prior testimony in criminal cases, the chemist was found to be qualified as an expert witness by the trial court. The chemist outlined the protocol she followed in

analyzing the substance contained in the plastic bags, including running a "blank" between every use of the Gas Chromatograph Mass Spectrometer (GC Mass Spec) to ensure that there are no contaminants in the system and a "daily standard" to ensure that the Mass Spec is up to standards. She found nothing to indicate that the equipment was not working properly.

The chemist explained that the GC Mass Spec is actually two instruments used together: the Gas Chromatograph, which separates complex mixtures into their components, and the Mass Spectrometer, which identifies the components. The chemist stated that she randomly chose two of the bags, weighed their powdery contents, which were 84 and 241 milligrams respectively, and ran a "spot test" of each to give an indication of the class of drugs, if any, they contained. Each test indicated a low level of an opiate drug. Combined with the white coloration of the powder, the spot test suggested that the powder might be "heavily cut" with other substances, indicating the need to use more of it for the GC Mass Spec test.

The chemist testified that the samples from both bags tested positive for heroin. Because the combined weight of the powder from the two tested bags exceeded the 200 milligram statutory threshold, the chemist did not test the other six bags. On cross-examination, the chemist indicated that it was not the VFL's practice or protocol to run additional or confirmatory tests beyond the spot test and GC Mass Spec test. The chemist testified that she later divided the contents of each of the eight bags in half, retained one half, and packaged the other half for independent testing.

After the State rested, defendant moved for judgment of acquittal, asserting that the State chemist was not qualified to render an expert opinion, and that the evidence was insufficient to prove that the powder contained heroin. The court denied the motion, ruling that the chemist qualified as an expert witness, and that the evidence was sufficient to prove that the contents contained heroin.

A forensic chemist with a testing laboratory in Pennsylvania testified for the defense. He explained that, after receiving the eight bags for testing from the State, he further divided the contents of each into three parts for retention and for running two separate tests—the GC Mass Spec test and a follow-up test called thin layer chromatography or TLC. The forensic chemist stated that he ran both tests for the contents of all eight bags, and that none yielded a positive result for heroin. The forensic chemist also described in detail the protocols that he followed to ensure the reliability and accuracy of the test results, including the testing of quality control samples.

The defense rested after the forensic chemist's testimony. The court instructed the jury on the elements of the charged offense of possession of heroin in an amount consisting of 200 milligrams or more of one or more substances containing heroin, as well as the lesser offense of possession of heroin. The court's charge also included an instruction explaining that an expert witness was one with extra knowledge, skill, experience, or education about a particular subject, that an expert's opinion could be of great value, but that, as with any other witness, the jury could "accept all or part or none of the expert's testimony," and that the jury must give the expert's testimony "whatever weight you think it deserves and consider it together with all the other evidence." The jury returned a verdict of guilty on the charged offense. Defendant then renewed his motion for judgment of acquittal on the basis of insufficient evidence, which the court denied. This appeal followed.

"On appeal, we review the denial of the motion for acquittal . . . to determine whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has [produced] evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." State v. Carrasquillo, 173 Vt. 557, 559 (2002) (mem.) (quotation omitted). Defendant argues

here, as he did below, that the "overall evidence as to whether to (sic) substance in the baggies contained heroin preponderates heavily against the verdict[,] requiring reversal of the conviction." The argument is unpersuasive. Although defense counsel implies that the defense expert witness testimony was more reliable than the State's expert witness testimony because the defense expert ran more elaborate protocols for testing the reliability of his equipment and tested the contents of all eight bags, rather than two, there was no evidence that the State's positive test results were unreliable or inaccurate. Moreover, as the trial court instructed, the jury was free to determine the weight to be accorded the testimony of each expert witness and the evidence as a whole. See Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 22, 194 Vt. 12 ("[A] factfinder must exercise reasoned judgment in weighing . . . competing expert opinions."). The unequivocal testimony of the State's expert chemist that the two bags yielded more than 200 milligrams of a substance containing heroin, coupled with defendant's own admission that he had purchased ten bags of heroin and the investigating officer's positive field test of the substance for heroin, fairly and reasonably supported a verdict of guilty beyond a reasonable doubt. The jury's determination of which of the competing experts' testimony they chose to believe is at the heart of a jury's role.

On appeal for the first time, defendant argues that the trial court should have granted a new trial under V.R.Cr.P. 33, although defendant never asked for this remedy. Defendant argues that preservation was unnecessary because the failure to grant a new trial is plain error. Defendant argues that a new trial must be ordered because the evidence preponderates heavily against the verdict and a serious miscarriage of justice will otherwise result. See State v. Couture, 169 Vt. 222, 227 (1999). The grant of a new trial under the rule is highly discretionary and such a remedy is "used sparingly and only in exceptional circumstances." See State v. Turner, 2003 VT 73, ¶ 11, 175 Vt. 595. Even if we assume we can use the doctrine of plain error to grant a motion never made, we would not do so here. While there was a conflict in the evidence, we cannot say that the evidence preponderates heavily in defendant's direction. Nor do we see a serious miscarriage of justice in a circumstance where defendant believed he purchased and possessed a large quantity of a substance containing heroin and used some of it for the effect he desired, but to his surprise the amount of heroin in that which remained was so diluted that it escaped measurement at least by some devices.

Affirmed.


BY THE COURT:


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice


3