**STATE of Vermont v. Raymond R. GADREAULT**

[758 A.2d 781]

No. 99-208

July 26, 2000. Defendant Raymond Gadreault appeals his conviction for cruelty to animals. He argues that (1) the court erred by ruling that the specific offenses of the cruelty to animals statute with which he was charged do not include an intent element; (2) he was denied a speedy trial; (3) the search warrant used to search his property was obtained through illegal means; (4) the court's sentence was excessive, in violation of his Eighth Amendment rights; (5) his Sixth Amendment rights were violated because he was not allowed to assist his attorney and because the State failed to call a particular witness; and (6) the trial judge should have been recused. We affirm.

On December 3, 1997, a search of defendant's property revealed three frozen,

dead pigs in an unsheltered pen in six inches of liquid manure, and a calf tethered to a fence post that appeared weak and to have difficulty standing.[*] On February 5, 1998, defendant was arraigned on four counts of cruelty to animals in violation of 13 V.S.A. § 352 (previously 13 V.S.A. § 352(a)). Following a two-day jury trial held in March 1999, defendant was found guilty on three counts. He was sentenced to six months to one year on each count, consecutive, all suspended with probation, and this appeal followed.

First, defendant claims that the court erroneously excluded the intent element from the crimes with which he was charged. The intent element, or mens rea, of a crime embodies one of the most fundamental principles in criminal law: a person cannot be held criminally liable for causing a bad result without a culpable mental state with respect to that result. See *State v. Stanislaw*, 153 Vt. 517, 523, 573 A.2d 286, 290 (1990).

The State charged defendant with violating the following two provisions of the cruelty to animals statute:

> A person commits the crime of cruelty to animals if the person:
>
> . . . .
>
> (3) ties, tethers, or restrains an animal, either a pet or livestock, in a manner that is inhumane or is detrimental to its welfare. Livestock and poultry husbandry practices are exempted;
>
> (4) deprives an animal which a person owns, possesses or acts as an agent for, of adequate food, water, shelter, rest or sanitation, or necessary medical attention, or transports an animal in overcrowded vehicles.

13 V.S.A. § 352(3), (4). The State filed a motion in limine to preclude defendant from introducing evidence supporting a diminished capacity defense, arguing that the relevant subsections of the cruelty to animals statute do not require intent and thus are strict liability offenses. After initially denying the motion, the court granted it on reconsideration, reasoning that the purpose and plain language of the statute supported the conclusion that intent was not an element of subsections (3) and (4). We agree.

When statutory crimes are without a common-law antecedent, we resolve the question of which mental element, if any, is required through statutory construction. See *State v. Dann*, 167 Vt. 119, 132, 702 A.2d 105, 113 (1997). Cruelty to animals was not an offense at common law. See *Regalado v. United States*, 572 A.2d 416, 420 (D.C. 1990); *In re William G.*, 447 A.2d 493, 495 (Md. Ct. Spec. App. 1982); *State v. Prater*, 109 S.W. 1047, 1049 (Mo. Ct. App. 1908) (acknowledging that if "cruelty to animals was a criminal offense at common law, which some writers deny, it was superseded so entirely in England by statutes as to pass out of view."). In construing statutes, we give effect to the Legislature's intent while mindful of the law's subject matter, its effects and consequences, and its reason and spirit. See *Dann*, 167 Vt. at 132, 702 A.2d at 113. Our first step in determining the Legislature's intent is to study the language of the statute. See *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999).

Neither § 352(3) nor (4) expressly provide an element of intent. "When the Legislature is silent as to the mens rea required for a particular offense, this Court will not simply assume that the statute creates a strict liability offense . . . ." *State v. Audette*, 149 Vt. 218, 221, 543 A.2d 1315, 1317 (1988) (*overruled on*

---

[*] Due to defendant's failure to file a transcript with the Court, we reference the facts contained in the State's affidavit of probable cause.

*other grounds by State v. Sargent*, 156 Vt. 463, 465, 594 A.2d 401, 402 (1991)). Rather, we determine the Legislature's intent through consideration of several factors, the most pivotal of which is the severity of the punishment provided for the offense. See *id.* at 221-22, 543 A.2d at 1317 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.8(a) (1986) ("[T]he greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault.")). Cruelty to animals in violation of § 352(3) and (4) is a misdemeanor punishable by imprisonment of not more than one year or a fine of $2,000 or both, as well as the possible forfeiture of the abused animal and any other animal and any future right to own or possess an animal. See 13 V.S.A. § 353. This is not an overly severe penalty, and imposing it on a strict liability basis would not create absurd or unjust results. See *Audette*, 149 Vt. at 222, 543 A.2d at 1317 (concluding that offense carrying possible twenty-five year jail sentence requires intent element to avoid absurd or unjust results).

In addition, many of the other enumerated statutory means of committing cruelty to animals expressly require an intent element. Subsection (2) prohibits the exposing of an animal to a poison "with intent that it be taken by the animal." 13 V.S.A. § 352(2). Subsection (5) prohibits the keeping or training of an animal "with intent that it be engaged in an exhibition of fighting." *Id.* § 352(5). Subsection (8) prohibits one from "intentionally" tormenting or harassing an animal owned by the police or a state agency. Finally, subsection (9) prohibits the "knowing" sale of artificially colored poultry. *Id.* § 352(9). Since the Legislature expressly included elements of intent in other subsections of the animal-cruelty statute, "we cannot assume a mere inadvertent omission" of intent from subsections (3) and (4), nor

"find an unexpressed intent by implication." *State v. Kerr*, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983). Because the punishment for a violation of subsections (3) and (4) is not severe and the subsections do not include an intent element, in contrast to other subsections, we conclude that the Legislature intended that offenders of § 352(3) and (4) be held strictly liable.

Our conclusion is bolstered by Vermont's long-standing proscription against animal cruelty as well as this Court's recognition that intent is not an element of the crime. The cruel beating or torturing of animals was criminalized as early as 1854. See 1854, No. 51, § 1 ("Every person who shall cruelly beat or torture any horse or ox, or other animal, whether belonging to himself or not, shall be punished by imprisonment . . . not more than one year, or by fine not exceeding one hundred dollars, or both . . . ."). In 1872, "for the more effectual prevention of cruelty to animals," the Legislature declared that, "[w]hoever shall . . . fail to provide with proper food, drink, and shelter . . . any horse, ox, or other domesticated animal," shall be imprisoned for not more than one year or fined up to two hundred dollars, or both. See 1872, No. 29, § 1. The Legislature further defined animal cruelty in 1876:

> [W]hoever, having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or *unnecessarily fails to provide the same with proper food, drink, shelter or other protection from the weather*, shall for every such offense be punished by imprisonment in jail not exceeding one year, or by fine not exceeding two hundred dollars, or by both such fine and imprisonment.

1876, No. 14, § 1 (emphasis added). The phrase "unnecessarily fails to provide"

remained on the books until 1990, when it was replaced with the current statutory scheme. See 13 V.S.A. § 403; 1947 V.S. § 8360; 1933 P.L. § 8500; 1917 G.L. § 6919; 1906 P.S. § 5809; 1894 V.S. § 4993; 1880 R.L. § 3935.

In 1946, we explained that "[t]he words 'unnecessarily' and 'proper' are to be understood in their ordinary sense, and as here used can only mean that while the respondent could have provided such food and drink he failed to do so." *State v. Persons*, 114 Vt. 435, 437, 46 A.2d 854, 855-56 (1946) (interpreting 1933 P.L. § 8500). This construction supported our later holding that "the statute shows that neither intent nor malice is an essential element to be proven to obtain a conviction for a violation of the statute." *State v. Vance*, 119 Vt. 268, 274, 125 A.2d 800, 803 (1956) (construing 1947 V.S. § 8360). Thus, since 1956, Vermont law proscribing animal cruelty required only that the perpetrator's actions be voluntary. See *id.*; Annotation, *What Constitutes Offense of Cruelty to Animals—Modern Cases*, 6 A.L.R.5th 733 § 10 (1992) (view that offender's actions must be committed voluntarily). We see no reason to change this approach under the statute currently in force, particularly in consideration of the fact that the Legislature has deleted the word "unnecessarily" from § 352(3) and (4).

We recognize that § 352(3) includes the word "inhumane," which itself implies an element of intent. To "restrain an animal . . . in a manner that is inhumane" requires the general intent on behalf of the restrainor to effect restraint in a particular manner, one that is specifically not humane. The statute, however, imposes liability for restraining an animal in a manner that is "inhumane *or* is detrimental to its welfare." Thus, the restraint need only be detrimental to the animal's welfare, which does not require the general intent that it be inhumane. Because we find that the Legislature intended that

subsections (3) and (4) set forth strict liability offenses, the court did not err in excluding an intent element from its instruction.

We note, however, that, as strict liability offenses, § 352(3) and (4) require at least that the restraint or deprivation of food, water, and shelter be the result of a voluntary act or omission. "While a strict liability crime does not require a culpable mental state, it does require a voluntary criminal act." L. Levenson, *Good Faith Defenses: Reshaping Strict Liability Crimes*, 78 Cornell L. Rev. 401, 431 (1993). A voluntary act includes an affirmative act or an act of omission. See *id.* at note 154 (citing Model Penal Code § 2.01 (Proposed Official Draft 1962)). Although intent is not an element, "the act or omission must be 'willful,' i.e., deliberate and voluntary, in order to violate even a strict liability provision." 21 Am. Jur. 2d *Criminal Law* § 146. That the omission was involuntary, therefore, is a defense available to a person who takes a trip, leaving adequate food and water for his pet, and is unable to return to replenish the provisions because of a storm or other unanticipated or uncontrollable event. Such a defense would also be available to a person who should own an animal that unexpectedly requires medical attention when he is not present to provide it. A court may, however, as did the court in the instant case, preclude defendant from referring to, or introducing any evidence relating to, his mental capacity or orientation to reality.

Next, since his trial did not commence until 14 months after his arraignment, defendant claims that the court denied him his right to a speedy trial. Of the factors used to assess this claim — length of delay, reasons for delay, defendant's efforts to obtain a speedy trial, and the prejudice to the defendant — it is the prejudice to the defendant which is most important. See *State v. Turgeon*, 165 Vt. 28, 35, 676 A.2d 339, 343 (1996). "Where

there is no prejudice to the defense at trial, a speedy-trial claim cannot prevail." *Id.* Here, defendant has not identified any prejudice to his defense. Although he has mentioned that he was restricted from raising his own food, this is not a relevant prejudice to the defense of his prosecution. Therefore, we find no violation of his right to a speedy trial.

Defendant next contends that the information upon which the search warrant was based was illegally obtained and, thus, the warrant was unlawful. Defendant presented this very contention to the court in a motion to suppress, which the court denied. The court found that, as to the observations of police, Humane Society Officers and others of conditions of the animals at the defendant's property, "the present record establishes that these observations were all made from constitutionally permissible vantage points." Defendant has not identified anything in the record which shows that the court's ruling was clearly erroneous or unsupported by the record. Therefore, we will not disturb the court's finding on this matter. See *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990) ("We will not disturb the trial court's findings of fact unless they are unsupported by the evidence or clearly erroneous.").

Defendant next claims that his sentence was excessive in violation of the Eighth Amendment. There is nothing in the record to show that defendant preserved this issue for appeal because he failed to file transcripts of the proceedings below; thus we will not consider it. See *Appliance Acceptance Co. v. Stevens*, 121 Vt. 484, 488, 160 A.2d 888, 891 (1960) ("It is the burden of the party challenging a ruling to furnish the reviewing court a transcript of the proceeding involved. . . . To omit to incorporate into the record on appeal the transcript of applicable testimony and proceedings without authorization is to forfeit review of questions requiring reference to the transcript."); *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 523, 711 A.2d 1163, 1169 (1998) (we may not consider on appeal issues not raised in trial court).

Finally, defendant contends that his Sixth Amendment rights were violated because he was not allowed to assist his attorney and because the State failed to call a particular witness who was present at the search of his house; and the judge, who was acquainted with defendant, should have been recused. Defendant's failure to file a transcript also precludes us from reviewing these claims. See *Appliance Acceptance*, 121 Vt. at 488, 160 A.2d at 891. The lack of transcripts leaves us with insufficient information with which to address these issues. For example, defendant claims that he was denied the opportunity to assist his attorney in violation of his Sixth Amendment rights. Also, defendant claims that, as a result of his acquaintance with the trial court judge, the judge should have recused himself. Without a record, we cannot shed any light on these claims. We cannot determine how defendant was denied the opportunity to assist his attorney, if at all. Nor can we assess the nature of the judge's relationship with defendant, if any, to determine if in fact the judge should have been recused.

*Affirmed.*