2005 VT 19

# State of Vermont v. Stephen Synnott

[872 A.2d 874]

No. 03-113

Present: **Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed February 4, 2005

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Bradley S. Stetler* of *Stetler, Allen & Kampmann*, Burlington, for Defendant-Appellant.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Defendant appeals a jury verdict finding him guilty of lewd and lascivious behavior, second degree unlawful restraint, and attempted sexual assault. He argues that (1) the trial court abused its discretion by admitting evidence of him touching his genitals and acting strangely in a holding cell at the police station following the alleged assault; (2) the unlawful restraint conviction cannot stand independent of the other charges; (3) the evidence was insufficient to support the attempted sexual assault conviction; (4) the trial court's jury instruction on the attempted sexual assault conviction failed to adequately explain the element of intent; and (5) the trial court gave the jury an erroneous and prejudicial supplemental instruction on the attempted sexual assault charge. We find no error requiring reversal and therefore affirm the convictions.

¶ 2. On the evening of December 28, 2001, the complainant and her friend, who was spending the night with complainant, were having drinks at a bar when defendant arrived and sat near the two women.

After the three spent several hours at the bar conversing, the complainant decided that it was time to take her drunk friend home. Defendant suggested that they go to his nearby hotel for coffee. They agreed and walked a couple of blocks to the hotel. After spending about an hour in defendant's hotel room, where the complainant allowed defendant to give her a back rub, they walked to the complainant's apartment, less than a mile away. When they arrived at the apartment, the complainant's friend fell asleep immediately.

¶ 3. Over the next four hours, defendant behaved in a manner that increasingly alarmed the complainant. Defendant became upset after being unable to download a particular song from the Internet. When the complainant suggested that it might be time to call it a night, defendant put his hands on her shoulder to prevent her from standing up and pushed her back into the chair she was sitting in. Refusing to allow the complainant to log off the Internet, defendant swung his legs over the arms of her chair, sat down on her lap facing her, and began kissing her and squeezing her breasts. Every time the complainant attempted to get up to check on her friend or to change the song on the CD player, defendant would push her back into the chair. At times, he became agitated, complaining about the music or the complainant not drinking. The complainant attempted to placate him by agreeing with him and pretending to drink.

¶ 4. Finally, defendant allowed the complainant to go to the bathroom, but he insisted that she come right back, and he pushed the bathroom door open while she was inside. When the complainant returned from the bathroom, she asked defendant to leave. Defendant became agitated, repeatedly asking the complainant if he had not been good to her. At one point, he stood over the complainant's friend, whom he and the complainant had moved from an air mattress in the living room to the bedroom, and made chopping movements with his hands.

¶ 5. Defendant then pulled the complainant back into the living room, sat down on a chair, and tried to pull her onto his lap. When she resisted, he got angry. She reached for his shoulder in an attempt to calm him, but he screamed at her not to touch him. When she told him that she was tired, he pushed her onto the air mattress, pinned her with his body, and began yelling at her. He then began kissing her, fondling her, and removing her clothes. He ignored her pleas that he stop, and every time she tried to push him away, he screamed at her not to touch him. He removed his clothes and began to grind his crotch against hers. He urged her to take off her jeans and tried to do so

himself when she refused. At one point, he whispered into her ear that he was bipolar, which made her more frightened of him. She eventually got him to get off of her by begging him for a glass of water. When he left the room, she ran to the computer and logged off the Internet.

¶ 6. When defendant returned, he was angry that the complainant had put her turtleneck back on. He kept asking her if he had not been good to her. By this time, the complainant was crying and begging defendant, telling him that it was her fault and not his. At one point, defendant grabbed her hand and pulled her towards the kitchen, again asking her if he had not been good to her. Then he put his hand around her throat and began to squeeze. He let her go after she acknowledged that he had been good to her. When he opened the refrigerator door, the complainant grabbed the phone, ran into the bedroom, and called the police.

¶ 7. Minutes later, the police arrived at the apartment building and saw defendant walking along the road outside, wearing a jacket and jeans, but no shirt. They detained him and spoke to the complainant, who was hysterical. Defendant was taken into protective custody and placed in a holding cell monitored by a security camera. While in the holding cell, defendant pulled down his pants, urinated, and then sat on the toilet. At one point, he got up from the toilet, walked around with his pants at his ankles, touched his genitals, and then raised his arms toward the ceiling. When the officer told him to put his pants back on, he did so.

¶ 8. Defendant was charged with (1) lewd and lascivious behavior, in violation of 13 V.S.A. § 2601, for fondling the complainant; (2) second degree unlawful restraint, in violation of 13 V.S.A. § 2406(a)(3), for preventing the complainant from getting out of her chair during a one-and-one-half-hour period; and (3) attempted sexual assault, in violation of 13 V.S.A. § 3252(a)(1) and § 9, for engaging in acts toward the commission of a sexual assault before being prevented from doing so. The district court denied defendant's pretrial motion to prevent the prosecution from admitting evidence concerning his behavior in the holding cell on the night of the alleged assault. Following a three-day trial, the jury convicted defendant on all three charges. The district court sentenced defendant to serve four-to-eight years for the first two offenses, with a suspended five-to-twenty-year sentence for the third offense.

I.

¶ 9. Defendant first argues that the introduction of a videotape showing him in a holding cell nude, urinating, defecating, and touching his genitals — together with police testimony concerning that behavior — was so prejudicial as to warrant a new trial. Shortly before trial, defendant filed a motion in limine asking the trial court to exclude testimony or other evidence of his behavior after the police took him into protective custody on the night of the alleged assault. Defendant argued that evidence concerning his behavior following his arrest would serve only to prejudice his case and inflame the jury. Defendant also argued that the videotape taken in the holding cell did not support the officers' testimony concerning his behavior. At the hearing on the motion, the State contended that evidence of defendant's erratic behavior following his arrest was relevant to corroborate the complainant's description of his bizarre behavior during the alleged assault and to counter his contention that she never clearly rejected his sexual advances. In response, defense counsel stated only that the videotape did not support the testimony of police officers that defendant was masturbating or engaging in lewd behavior in the holding cell. The trial court ruled that defendant's conduct after his arrest was relevant on the issue of consent, particularly given that the case was a credibility contest between defendant and the complainant. As for the potential prejudice to defendant, the court noted that the evidence might actually support defendant's diminished capacity defense.

¶ 10. At trial, one of the police officers who monitored defendant in the holding cell testified that she observed defendant urinate, sit down on the toilet, and then get up with his pants at his ankles, face the camera, and pull on his penis while screaming. Following this testimony, the jury viewed a videotape of defendant in the holding cell. The videotape is a soundless series of still images from several different cameras. The views of defendant in the holding cell last one-half second or less before moving on to views from other cameras showing scenes inside and outside the police station. The brevity of the still frames and the rapid movement from one frame to another make it difficult to view the videotape and to see what is happening. Generally, the videotape shows defendant, at various times, lying on a cot, urinating, and sitting on the toilet. At one point, defendant gets up from the toilet with his pants at his ankles, walks to the cell door, turns to face the camera, and then reaches toward the ceiling with both arms before placing his hands on his crotch. There are seven or eight still

frames from the time he gets off the toilet until he pulls his pants back up, and only one of them shows defendant with his hands on his crotch.

¶ 11. After the videotape was shown to the jury, defendant asked the trial court to instruct the jurors that the videotape "relates only to the defense of intoxication and should not be used as evidence that he was engaged in some kind of lewd and lascivious act because there's nothing charged as far as what happened in the jail cell." The State responded that the videotape was being offered to corroborate the victim's account of defendant's bizarre behavior. Although the transcript of the court's response is not entirely clear, the bases for the court's refusal to give the requested instruction appear to be that the videotape is relevant with respect to the issue of consent and does not show defendant engaging in lewd and lascivious behavior.

¶ 12. On appeal, defendant argues that the trial court abused its discretion by admitting both the testimony and videotape concerning his behavior in the holding cell, but he focuses primarily on the videotape. He first asserts that the court failed to exercise its discretion by not viewing the videotape and weighing its probative value against any potential prejudicial impact before denying his motion in limine and showing the videotape to the jury. He also contends that the videotape has little probative value but, on the other hand, is highly prejudicial because it depicts him engaging in private bodily functions and acts of a sexual nature. According to defendant, the trial court abused its discretion by failing to grasp that evidence of him engaging in sexually explicit conduct would be highly prejudicial in a case charging him with sexual offenses.

¶ 13. We agree with defendant that the trial court abused its discretion by not previewing the videotape before ruling on his motion in limine and showing it to the jury. Without previewing the videotape, it would be difficult, if not impossible, for the trial court to weigh its potential prejudicial impact on the jury. Nevertheless, we find no reversible error. The court eventually viewed the videotape along with the jury, and found that it was ambiguous and unlikely to have significant prejudicial impact on the jury. The court stated that the videotape did not reveal the type of lewd actions that it had expected to see based on the arguments presented at the motions hearing. Apparently, the court felt that the brief still images of defendant in the holding cell would, if anything, diminish the effect of the police officer's testimony concerning defendant's behavior in the cell and possibly provide support for defendant's diminished capacity defense. Thus, unlike the situation in *State v. Shippee*, 2003 VT 106, ¶¶ 14-15, 176 Vt.

542, 839 A.2d 566 (mem.) (remanding case because there was "no sign" that trial court ever weighed evidence under V.R.E. 403), the court in this case did eventually weigh the potential prejudicial impact of the tape against its probative value.

¶ 14. Furthermore, although this case presents a close question, we conclude that the trial court did not abuse its discretion by admitting the testimony and videotape concerning defendant's behavior in the holding cell. See *id.* ¶ 13 ("The discretion of the trial court is broad when reaching a decision based on the balancing test under Rule 403."). Without question, introducing evidence of defendant's behavior in the holding cell had some potential to prejudice a jury deciding whether he was guilty of sexual offenses on the same night. But there are several factors countering the potential prejudice. It was undisputed that defendant was highly intoxicated when he was taken to the holding cell. Indeed, defendant argued that evidence of his behavior in the cell negated the element of intent in the attempted sexual assault charge leveled against him. Further, as the trial court noted, the videotape does not show any explicit lewd acts committed by defendant. There is only one frame that shows defendant's hands touching his crotch, and he does not appear to be making any lewd gesture or movement in that image.

¶ 15. While defendant does not appear to engage in any lewd behavior in the cell, his behavior does seem bizarre, particularly the gestures he makes with his arms raised over his head. As defendant acknowledges, the critical issue at trial was the complainant's credibility, specifically as to whether she made it clear to defendant that his sexual advances were unwelcome. The complainant testified that defendant's mood swings and bizarre behavior frightened her and convinced her that the best way to ward off his sexual advances was to pacify and distract him rather than confront or antagonize him. Defendant sought to convince the jury that the complainant was receptive to his advances, at least initially, and, in any event, did not ever clearly and unequivocally reject those advances. In fact, defendant argued in his motion for a new trial that the complainant's trial testimony demonstrated that she did not resist his advances and failed to communicate clearly that she was not consenting to those advances.

¶ 16. Therefore, evidence of defendant's mood swings and bizarre behavior shortly after the alleged assault was highly relevant and probative as to whether the complainant had reason to fear defendant and to be cautious in resisting his advances. Given these circumstances, the trial court acted within its broad discretion in admit-

ting the evidence of defendant's behavior in the holding cell shortly after the alleged assault. Cf. *United States v. Boyd*, 610 F.2d 521, 526-27 (8th Cir. 1979) (holding that trial court did not abuse its discretion under Rule 403 by admitting photographs of co-conspirators and other women naked); *State v. Manning*, 598 N.E.2d 25, 29 (Ohio Ct. App. 1991) (holding that trial court did not abuse its discretion under Rule 403 by admitting unflattering photographs that defendant's husband had taken of her before she killed him).

¶ 17. Finally, the trial court acted within its discretion in refusing to give the limiting instruction that defendant requested. As noted, defendant asked the court to instruct the jury to consider the videotape only with respect to his diminished capacity defense and not as evidence that he engaged in lewd behavior. Not surprisingly, the court refused to instruct the jury as such because it had admitted the videotape as evidence related to the issue of whether the complainant had consented to defendant's sexual advances. We have already ruled that the trial court did not abuse its discretion in admitting the videotape. It would certainly have been proper for the court to instruct the jury that it should not consider any lewd acts he may have committed in the holding cell after his detention as evidence that he was guilty of the charged offenses, but that was not the limiting instruction that defendant requested.

## II.

¶ 18. Next, defendant argues that the unlawful restraint conviction must be reversed because it is based solely on conduct incidental to the underlying charge of lewd and lascivious behavior. Defendant was charged with knowingly restraining another person. See 13 V.S.A. § 2406(a)(3). In relevant part, the statute defines the word restrain as restricting "substantially the movement of another person without the person's consent or other lawful authority by ... confining the restrained person for a substantial period." *Id.* § 2404(3)(C).

¶ 19. The test for determining whether a confinement may be charged as a separate offense is "whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution." *State v. Goodhue*, 2003 VT 85, ¶ 16, 175 Vt. 457, 833 A.2d 861. Among the factors we consider in applying this test are

> whether evidence of the seizure, detention, or movement was or was not inherent in the nature of the underlying crimes;

whether the crime was facilitated by the confinement; whether the movement or confinement prevented the victim from summoning assistance; whether the movement or detention lessened the defendant's risk of detection; and whether the movement or detention created a significant danger or increased the victim's risk of harm.

*Id.* ¶ 13.

■ ¶ 20. In this case, defendant confined the complainant for approximately one and one-half hours while alternately fondling and intimidating her. The duration of confinement was well beyond the time required to perpetrate a lewd and lascivious act. Cf. *State v. Maunsell,* 170 Vt. 543, 543, 743 A.2d 580, 581 (1999) (mem.) (complaining witness was seated in library when she observed defendant eight feet away massaging his genitals); *State v. Ovitt,* 148 Vt. 398, 401, 535 A.2d 1272, 1274 (1986) (complaining witness observed defendant masturbating while standing by barn located across street); *State v. Purvis,* 146 Vt. 441, 442, 505 A.2d 1205, 1206 (1985) (complaining witnesses were walking home from school when defendant exposed himself from window of his house). Further, the lengthy confinement increased the complainant's vulnerability and subjected her to an increased risk of harm. Moreover, the nature of the restraint effectively isolated the complainant by preventing her from summoning assistance and by lessening defendant's risk of detection. Therefore, we conclude that the confinement in this case was criminally significant in and of itself and not merely incidental to defendant's lewd and lascivious conduct. Cf. *State v. Carrasquillo,* 173 Vt. 557, 561, 795 A.2d 1141, 1146 (2002) (mem.) (holding hostage at knife point for several minutes during escape attempt was sufficient to support separate kidnapping conviction); *State v. Lang,* 164 Vt. 598, 599, 664 A.2d 267, 268 (1995) (mem.) (accosting elderly woman and holding her hostage in her bedroom for fifteen minutes late at night during robbery, and then disabling telephone so that she had to wait until morning to contact someone, was sufficient evidence to support separate kidnapping conviction).

### III.

¶ 21. Defendant next argues that the evidence was insufficient to support the attempted sexual assault conviction. According to defendant, the evidence demonstrates that he stopped his sexual advances when the complainant finally got the message across to him that she did not want to have sex with him. He contends that he was not

interrupted or prevented from completing a sexual act, see 13 V.S.A. § 9(a) (establishing punishment for "person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of the same"), but rather stopped on his own volition when he understood that she was not consenting to his sexual advances.

¶ 22. We find this argument unavailing. "An attempt requires intent to commit a particular crime and an overt act designed to carry out that intent." *State v. McGee*, 163 Vt. 162, 165, 655 A.2d 729, 732 (1995). Hence, "[t]he act must advance the actor's conduct beyond mere intent, and reach far enough toward accomplishing 'the desired result to amount to the commencement of the consummation.'" *Id.* (quoting *State v. Boutin*, 133 Vt. 531, 533, 346 A.2d 531, 532 (1975)). Further, once the actor has committed the requisite overt act, the offense is complete, and abandonment of the enterprise does not negate guilt. See *Wiley v. State*, 207 A.2d 478, 480 (Md. 1965) ("[A] voluntary abandonment of an attempt which has proceeded beyond mere preparation into an overt act or acts in furtherance of the commission of the attempt does not expiate the guilt of, or forbid punishment for, the crime already committed."); *State v. Miller*, 477 S.E.2d 915, 922 (N.C. 1996) ("[O]nce a defendant engages in an overt act, the offense is complete, and it is too late for the defendant to change his mind."); see also R. Perkins, Criminal Law § 3, at 511 (1957) ("The accepted view has been that a criminal attempt is a 'complete offense' in the sense that one who has carried a criminal effort to the point of punishability can no more wipe out his criminal guilt by an abandonment of his plan than a thief can obliterate a larceny by restoration of the stolen chattel.").

¶ 23. Here, the State presented evidence showing that defendant pushed the complainant onto an air mattress, fondled her, removed her turtleneck and bra, removed his own clothes, ground his crotch against hers, and tried to remove her pants before agreeing to get her some water. Minutes later, when defendant went to get the water, he pulled the complainant along with him and squeezed her throat until she acknowledged that he had been good to her. His sexual advances ended only when she ran into her bedroom and called the police after he opened the refrigerator door. This evidence does not demonstrate abandonment and, in any case, was sufficient for the jury to conclude beyond a reasonable doubt that defendant's actions had advanced beyond mere intent to commencement of the consummation of a sexual

assault. See *Carrasquillo*, 173 Vt. at 559, 795 A.2d at 1145 (standard of review for denial of motion for judgment of acquittal is "whether, taking the evidence in the light most favorable to the state and excluding modifying evidence, the state has produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt"); cf. *Goodhue*, 2003 VT 85, ¶¶ 2, 6 (evidence that defendant threw victim to floor, ripped off her shirt, and tried to remove her pants before fleeing when he heard door slam was sufficient to support attempted sexual assault conviction); *State v. Jackson*, 813 P.2d 156, 158-59 (Wash. Ct. App. 1991) (evidence that defendant lured victim into bedroom and threatened to kill her if she did not lift her skirt was sufficient to support attempted sexual assault conviction); *State v. Gatalski*, 699 P.2d 804, 806, 811 (Wash. Ct. App. 1985) (evidence that defendant pushed victim onto bed, lay on top of her, and tried to force his hands under her clothing before he let her use the bathroom, where she escaped through a window, was sufficient to support attempted sexual assault conviction).

## IV.

¶ 24. Defendant next argues that the trial court erroneously omitted the element of intent when instructing the jury on the attempted sexual assault charge. According to defendant, the court failed to convey the jury's obligation to find that he intended to engage in a sexual act with the complainant without her consent. We find no error. Whatever ambiguity may have been created by the trial court's original instructions, the court gave a supplemental instruction telling the jury that the State had to prove that defendant intended to have sexual intercourse with the complainant without her consent, and that he took steps to accomplish that end. See *State v. Jennings*, 583 A.2d 915, 925 (Conn. 1990) (question in reviewing adequacy of jury instructions is whether jury could have reasonably been misled in light of entire instructions, including any supplemental instructions).

## V.

¶ 25. Finally, defendant argues that the trial court committed reversible error by giving the jury a supplemental instruction stating that it could find sufficient evidence of an attempted sexual assault if the complainant said "ouch" during the incident that formed the basis for the charge. According to defendant, because there was evidence that the complainant said "ouch" at one point during the alleged assault, the court's instruction effectively directed a guilty verdict against him.

We decline to consider this argument because defendant has failed to produce a record showing that the trial court instructed the jury as he claims, even though the supplemental instructions concerning the attempted sexual assault were transcribed. See *State v. Gadreault*, 171 Vt. 534, 538, 758 A.2d 781, 786 (2000) (mem.) (defendant's failure to produce transcript showing he preserved issue for appeal precluded review on appeal); *Appliance Acceptance Co. v. Stevens*, 121 Vt. 484, 488, 160 A.2d 888, 891 (1960) ("To omit to incorporate into the record on appeal the transcript of applicable testimony and proceedings without authorization is to forfeit review of questions requiring reference to the transcript.").

*Affirmed.*