VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-318



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

OCTOBER TERM,   2025

State of Vermont v. Jesse A. Stevens\*

}  APPEALED FROM:
}  Superior Court, Bennington Unit,
}  Criminal Division
}  CASE NO. 24-CR-05741
Trial Judge: Kerry A. McDonald-Cady

In the above-entitled cause, the Clerk will enter:

Defendant appeals his convictions on four charges following a jury trial for acts committed against complainant, his wife.  On appeal, he argues that the court erred in denying his motion for acquittal and the court abused its discretion in admitting videos from his home security system.  We affirm.

In June 2024, defendant was charged with committing first-degree aggravated domestic assault and first-degree unlawful restraint on June 4, 2024, domestic assault and first-degree unlawful restraint on June 1, 2024, and kidnapping on May 18, 2023.[1]  At the time, defendant and complainant had been married for nine years and lived together with complainant's son, defendant's stepson.

At trial, complainant testified to the following events on June 4.[2]  When she arrived home from work, she and defendant argued after defendant doubted whether she had been at a therapy appointment.  Defendant screamed at complainant, called her names, and became very angry.  Later in the evening, defendant became upset again and punched a hole in the wall.  He was screaming and swearing.  Complainant left to go for a walk and then returned and sat on the front cement steps.  Defendant came outside, punched her on the side of the head, grabbed her shoulders, and hit her against the step.  He put his hand around her throat and was choking her.  He had one hand around her neck and his other hand was covering her mouth and nose to prevent

---

[1]  The kidnapping charge was added in an amended information.

[2]  Complainant also testified about the events from June 1, 2024, and May 2023 that supported the other charges.

her from screaming and calling for help. Complainant attempted to pull away, but defendant held her down, attempted to grab her cell phone, and kneeled on her chest. Defendant bit her on the back of the shoulder. While defendant was kneeling on her, complainant heard her son's car pull into the driveway. Complainant's son jumped out of the car and started screaming. Complainant's son testified that when he pulled into the driveway, he saw defendant with his arm on complainant's throat and his knee across her chest. The son stated that complainant was crying with her hands over her face. Police arrived soon afterward. Complainant sustained several injuries including bleeding from her nose, a bitemark on her shoulder, and bruises on her back and the back of her arms.

The State sought to introduce video clips from a home security system from June 4 showing defendant removing four cameras.[3] Defendant objected, arguing that the videos lacked authentication. The State provided the following testimony to support its request. Complainant testified that there is a home security system at the house with four internal and three external cameras. It was set up to record short clips when motion is detected. Those clips were then stored remotely and could be accessed and viewed by complainant through an application on her cell phone. Complainant used the application to access the videos from that date and email them to the State. Complainant stated that the system was operational on June 4, and that four videos from the evening—which were date and time stamped—showed defendant taking down all the cameras inside and outside the house about twenty minutes before he attacked complainant. Complainant indicated that she recognized each of the locations in the videos as where the cameras were located and that the videos accurately depicted the state of the home and surrounding area that evening. She also identified defendant in the videos. The court ruled that there was a sufficient foundation as to the authenticity of the videos and admitted them.

At the close of the State's case, defendant moved for judgment of acquittal on all but one count. As to the unlawful restraint from June 4, defendant argued that the State failed to provide sufficient evidence that the complainant was exposed to serious bodily injury. The court denied the motion. In its denial, the court explained that defendant's acts of kneeling on the complainant's chest and holding her down so she could not leave amounted to a significantly dangerous detention, and although it occurred during the domestic assault, the detention created a significant danger of further assault.

Defendant testified and generally denied the charges. As to the events on June 4, he stated that he was upset that complainant had changed the password on the home-security system. He admitted that he removed the security cameras, but claimed it was not right before "any incident." He testified that the bite mark on complainant happened while the two were having sex and denied assaulting complainant.

The court instructed the jury that to find defendant guilty of the unlawful restraint from June 4, it must find that he restrained complainant "under circumstances exposing [her] to risk of serious bodily injury." The court explained that restrain meant "to restrict substantially the movement of another person without the person's agreement, and without lawful authority by confining the restrained person for a substantial period." The court noted that the State was

---

[3] Other videos from the home security system were also admitted at trial and they are not challenged on appeal.

2

alleging defendant restrained complainant "by pinning her against the porch steps in order to assault her."

The jury returned a guilty verdict on all charges except it acquitted defendant of the unlawful-restraint charge from June 1. Following a contested sentencing hearing, the court imposed an overall sentence of eight to nineteen years to serve.

On appeal, defendant first argues that the trial court erred in denying his motion for acquittal of the unlawful-restraint charge from June 4. In reviewing the denial of a motion for acquittal, this Court applies the same standard as the trial court. We view the evidence in the light most favorable to the State, exclude any modifying evidence, and consider whether the evidence "is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346 (quotation omitted). "This standard is deferential to the role of the jury—it recognizes that trial and appellate courts should hesitate to place themselves in the position of jurors." Id.

Defendant asserts that the evidence here was insufficient because it did not show that there was unlawful restraint independent from the aggravated domestic assault.[4] To sustain a conviction for first-degree unlawful restraint, the State had to prove that defendant knowingly restrained another person "under circumstances exposing that person to a risk of serious bodily injury." 13 V.S.A. § 2407(a)(1). To restrain means to "restrict substantially the movement of another person without the person's consent" by "confining the restrained person for a substantial period." Id. § 2404(3)(C). "The test for determining whether a confinement may be charged as a separate offense is whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution." State v. Synnott, 2005 VT 19, ¶ 19, 178 Vt. 66 (quotation omitted). In determining whether confinement is significant, several relevant factors are whether the detention increased the dangerousness of defendant's behavior, occurred during the commission of a separate offense, and created a danger to the victim independent of the separate offense. State v. Carrasquillo, 173 Vt. 557, 560-61 (2002) (mem.); see State Goodhue, 2003 VT 85, ¶ 13, 175 Vt. 457 (listing factors to include whether victim's confinement was inherent in nature of underlying crime, facilitated by crime, prevented victim "from summoning assistance," "lessened the defendant's risk of detection," or "created a significant danger or increased the victim's risk of harm"). According to defendant, here, the restraint did not subject complainant to any increased harm beyond that already involved in the assault, the acts did not lessen defendant's risk of detection, and the confinement was not significant in itself.

---

[4] Defendant's argument on appeal differs from the one raised below. Before the trial court, defendant argued that there was insufficient evidence to show that complainant was exposed to serious bodily injury. Defendant did not argue that the confinement was merely incidental to the assault. In its denial of the motion, the trial court did, however, address this question, concluding that defendant's acts of kneeling on complainant's chest and holding her down were significantly dangerous and created a danger of further assault. We do not address whether defendant's objection was sufficient to preserve the issue for appeal because, even if preserved, we conclude that there was no error in denying the motion for acquittal.

The evidence, when viewed in the light most favorable to the State was sufficient for the jury to find that the confinement was not merely incidental to the aggravated assault and was significant enough to warrant its own prosecution.[5] While assaulting complainant by placing his arm across her neck and covering her nose and mouth to prevent her from breathing, defendant then pinned her against the porch. Defendant kneeled on complainant to prevent her from reaching her cell phone and the restraint increased the danger to complainant by preventing her from seeking help and keeping her under his control to further assault her. This is analogous to the facts in Synnott where the defendant restricted the victim's movements by preventing her from getting up and pinning her down so he could further assault her. Synnott, 2005 VT 19, ¶ 19 (explaining that confinement was criminally significant where it extended beyond time required to commit lewd and lascivious act, increased harm to victim, isolated victim, and prevented victim from summoning assistance). Therefore, the court did not err in denying defendant's motion for acquittal on this count.

Defendant next argues that the court abused its discretion in admitting the video exhibits from the home security system and therefore he is entitled to a new trial. Under Vermont Rule of Evidence 901(a), evidence must be authenticated "as a condition precedent to admissibility," by providing "evidence sufficient to support a finding that the matter in question is what its proponent claims." "A proponent need not show with absolute certainty that the evidence is what it is claimed to be, but instead need only show the proffered evidence's authenticity with reasonable certainty." State v. Hiltl, 2021 VT 60, ¶ 28, 215 Vt. 305 (quotation omitted). The trial court is the "gatekeeper," and we leave it to the jury to ultimately resolve whether "the evidence is what it purports to be.". Id. (quotation omitted). "We review issues regarding the admissibility of evidence for abuse of discretion." State v. Kelley, 2016 VT 58, ¶ 19, 202 Vt. 174.

The court did not abuse its discretion in admitting the video evidence. Video evidence may be authenticated either by a witness testifying that the video is accurate based on the witness's personal observation or under the "silent witness theory, under which the photographic evidence is a silent witness which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." Hiltl, 2021 VT 60, ¶ 29 (quotation omitted). To proceed under the latter, there must be a foundation to show the circumstances of how the video was taken and reproduced. Id. ¶ 31.

Complainant's testimony provided the necessary foundation here. She testified that the home had a residential security system, she described how the system worked, she stated that the system was operational on June 4, she confirmed that the videos accurately showed the home and defendant on that day, and she explained how she accessed the videos and sent them to law enforcement. Contrary to defendant's assertion, this case is distinguishable from Hiltl, where surveillance camera footage was insufficiently authenticated because there was no testimony

---

[5] The State argues that the requirement that the restraint be significant should be limited to kidnapping and urges this Court to overrule Synnott and other cases applying it to unlawful restraint. We do not reach this question because we conclude that, even applying the requirement here, the specific conduct supporting defendant's unlawful-restraint conviction was criminally significant and not merely incidental to the conduct involved in the aggravated domestic assault.

regarding how the surveillance system worked, whether it was operational on the day of the relevant events or how the videos were transferred to law enforcement. Complainant provided sufficient evidence to "support a finding that the matter in question [was] what its proponent claims," V.R.E. 901(a), therefore, the court did not abuse its discretion in admitting the home-security videos.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice